May it please the Court, Jacob Brooks, Assistant Attorney General for the State of Washington. I represent the appellants in this matter and I will reserve three minutes for rebuttal in this case. Your Honors, this case involves an issue that has unfortunately become a common issue in our world. School administrators responding to threats of violence directed towards staff or students on a school campus. Now, this threat, or whatever, was made to a counselor or doctor. Yes, Your Honor, so specifically, the disclosure was made to a doctor, but from the college's perspective and the college administrator's perspective, it was communicated to them by law enforcement and crisis response officials directly to the campus, and it was communicated as a threat. And specifically, that threat was that one of the... He didn't like send out this threat over the email or anything like that. You're correct, Your Honor, that's correct. Law enforcement communicated that one of the students in the Columbia Basin College nursing program had expressed homicidal ideations of attacking and even killing three of its instructors that it had named, that the student R.W. had named individually. Ultimately, Ralph Reagan, the Assistant Dean for Student Conduct... We've got all of that. Why don't you tell us... Well, why don't we... For my perspective, what I think is interesting here is you're up here on collateral review, correct? Correct, Your Honor, under the collateral order doctrine, yes. Right, because you asserted 11th Amendment immunity on behalf of the officials in their official capacity. Correct, Your Honor. Correct? So isn't our review somewhat restricted? It is. It is a narrow question. It's with regard to whether 11th Amendment sovereign immunity applies within the narrow exception of the ex parte Young Doctrine. And so I know the court directed that it wanted to hear an oral argument on two issues, one of those being whether the court has jurisdiction to review the merits of R.W.'s First Amendment claim as part of appellant's interlocutory appeal. So I will start there. So initially, under the collateral order doctrine, denial of 11th Amendment immunity is immediately appealable as an interlocutory review. That's well established under the Puerto Rico Aqueduct case. If we take that a step further, the ex parte Young exception is a very narrow exception to 11th Amendment immunity, where it allows that in that instance, if an official acting and their official capacity has an ongoing violation that can be only remedied through prospective injunctive relief, then we operate under this legal fiction of the ex parte Young exception and allow the suit to go despite it. I guess the question is, do we just decide whether or not the court got the ex parte Young analysis correct, which I think we're all familiar with, or do we actually also look through that and look at the merits also? So yes, the merits are within the question of the ex parte Young exception. And I would turn to the Miranda B. v. Kitzhoffer case that the court cited in its question. And in that case, which was from the Ninth Circuit, the court said, the test for when ex parte Young allows suits against officials to proceed is quite simple. In determining whether the doctrine of ex parte Young avoids an 11th Amendment bar to a suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. That's what's happening here, right? Correct, Your Honor. And so I would break that down into distinct parts. First, there has to be an underlying violation of federal law. We don't determine the merits. It has to be alleged. Yeah, it has to be alleged. It doesn't say it has to be one. That's the whole game here. Merits versus if they properly alleged one. Understood, Your Honor. And I would say in the Miranda B. case, that involved a motion to dismiss. So that, I think, is why the court is looking at whether there is an alleged underlying violation. Here, the state defendants move for summary judgment to dismiss the underlying action as not being within the ex parte Young exception. So if the court is looking at this question of, well, is there an underlying violation of federal law, and then is it ongoing? And then the other piece of this as well is, is the other party, the plaintiff, seeking relief that's properly characterized as prospective injunctive relief and not injunctive relief as something that has happened in the past? And so I have thought about it this week, Your Honors, and I have not found a case that says that the court cannot start its analysis at the summary judgment stage with the question of, well, was there an underlying violation of federal law? Well, the district court here has already made a finding on behalf of the plaintiff in a prior summary judgment ruling that there was a violation of the First Amendment. Correct. In your motion, you were asking her to reconsider that in light of the recent Supreme Court opinion. I forget the name of it. You were asking her to reconsider, and she went through, and she said, no, I'm not going to reconsider. It's different. I'm not sure that's exactly correct, but that recent Supreme Court opinion did factor into it. But initially, the question was, well, are Mr. Reagan and Mr. Thornton entitled to qualified immunity? That came up to appeal here. The court determined there's no clearly established law. It didn't reach the underlying question of whether there's a constitutional violation. And then it went back, and then, yes, the district court did say that I'm still sticking with my original finding that there's an underlying violation. That's what you want us to review as part of this appeal. Is that right? I believe that is part of something. Would you agree? Let me see if I can come at this a different way. Would you agree that on collateral, under the collateral doctrine, that not everything comes up, that not everything, or that not everything is, you're not appealing everything in a case? Correct. So if that's the case, and I think that's kind of it, then what, under your theory, is not coming up? So I would say that the question of whether Ex Parte Young is the narrow, applies here, is the narrow question that's coming up to this court. And then other issues, such as, you know, there were other claims, such as the ADA and Rehabilitation Act claims. Those don't come up here, because that doesn't fall under the- Your view is that the things that aren't related to Ex Parte, but if it's, if Ex Parte Young is the vehicle through which you're reaching a claim, then all of that is before us, is your view? Everything on the merits is before us. I would say so, Your Honor, just based upon the court's prior- How would that work if she hadn't, if the district court judge hadn't already ruled against you on summary judgment, and instead said, no, there's factual disputes, so I'm not going to, I'm going to have a trial on this at some point down the road? It wouldn't be before us then, right? If the court had said in the Ex Parte Young analysis- That this issue, the merits issue, at summary judgment, right, so there's going to be a trial down the road to decide that, because the court decided there was disputed issues of material fact. You wouldn't argue that was before us in that circumstance. When, let's say the court, all it had decided was, yes, you're subject to jurisdiction under Ex Parte Young. You appeal that, but it hadn't decided the merits. I think I understand what Your Honor is asking, and yes, that potentially could be in front of the court, but the court could say on appeal, well, there's still questions of fact, and we agree with the lower court's finding that there's questions of fact. Here, the lower court did not say that there's questions of fact. The lower court found that there was a violation, an underlying violation that occurred. The whole point of the collateral, the whole point of the collateral appeal is that if it's unfair for the district court to have found that your clients get to get hailed in the court under Ex Parte Young, then we should decide, it's kind of like sovereign immunity. We should decide that now, right? Instead of like forcing them to go through the whole game, but that's the whole point of it. And if that's the whole point, then why would that rationale lead us to believe that the merits should come up with it? Instead, I mean, the whole point of it is we can address the merits later when this is all over, but right now we just need to make sure that the district court was right, that your clients are subject to jurisdiction under Ex Parte Young. I understand, Your Honor. Why don't you put aside the merits for a moment? You have other arguments, right? You have an argument that, well, it's moot, kind of moot. Any injunctive relief is moot because they withdrew the letter that barred him from entering the campus. And then they allowed him to enter one of the two campuses. Certainly, Your Honor. Yes. And you say, well, that's moot. That moots everything. Yes. And I would characterize it as, you know, going back to that test as articulated in the Miranda B case, you know, are they seeking relief that is properly characterized as perspective? And part of that question then becomes, is there a continuing violation, which is related to the mootness issue and might appear very similar as well. But ultimately, the question is, is there a continuing violation that's still occurring that warrants prospective injunctive relief? And so for that question, which is another discrete part of the test, the answer is no. There is no prospective injunctive relief that is warranted here because there's no sanctions that are in place. That's not disputed in the record. The sanctions that were initially placed on RW once the college went through this process became defunct after RW declined to participate in this plan for re-enrolling within the program. So there were restrictions on his re-enrolling, though, correct? There were. There was a plan. Are there no restrictions today? There is no restrictions in place today. In fact, RW... And has his file been cleaned of any of the matter that this all, you know, which this all arose? Yes. And I would, I would point to your... Failing grades in those classes. I mean, I assume that you fail out enough. My daughter just completed a nursing program. My understanding was you fail enough classes and you're out. And he failed a bunch of classes, right? Because he's a semester. I believe got incompletes in those classes because he did not finish that semester or that quarter, rather. But ultimately, he does not have those, you know, he took issue with the idea that there are sanctions in place that were placed upon him for finding that he violated the student code of conduct and he was temporarily and then trespassed from the campus. Those two things are no longer in existence. And the court can look at ER-419, which is the declaration of the current College of or current president, rather, of Columbia Basin College, which is Rebecca Woods, makes it clear those sanctions are no longer in place. He can apply for re-enrollment just as any other student who takes an extended leave of absence pursuant to the requirements of the nursing program student handbook. And so, ultimately, he's in the same status quo as any other student who has taken extended leave of absence here. Can I ask a quick question? Maybe I misunderstood, but I thought that there were some letters that were sent out that had an impact. Has his file been purged of those letters so that they will not continue to have an impact on his future? You know, Your Honor, I don't think that's reflected in the record of whether that file has been purged, but the declaration of Rebecca Woods does make clear that he can apply for re-enrollment without any reference to any of the prior disciplinary actions. That only goes to his re-enrollment. It doesn't go so far as any future employment opportunity he might seek, for example, right? Potentially, again, I don't know. It's possible that it could be referenced in future employment, but, again, that's just not something in the record. And I, unfortunately, can't answer that. But I would... Look at this. Could he apply... Let's assume he reapplies. Will he automatically be readmitted? He has to go through the requirements of the, as spelled out within the student nursing handbook. He wants to be readmitted. I mean, let's assume that he wants to be readmitted. I don't know. Maybe he wouldn't apply without this being held against him. So this would not be held against him. The declaration of President Woods makes clear of that. He would have to go through the requirements of the student nursing handbook, and I believe also would have to, according to her declaration, go through a re-examination of basic skills to make sure, since it's been a length of time that has passed, whether he still maintains those skills that are necessary for the nursing program. Well, maybe what... I don't want to take over your time. I'll bet we'll hear from the other side that he's got all kinds of things that they're saying are a barrier, and then you can respond to that, maybe, rather than us speculating about what we think might be. Certainly, Your Honor. Is that okay for colleagues? Yes. All right. Thank you. Thank you. You may reserve the rest of your time for rebuttal. Your Honors, may it please the Court, my name is Brett Urick, and I represent FLE, RW in this matter. Because that's where we left off in regard to the prospective injunctive relief, my client received zeroes in those classes. He did not receive incompletes. They are still reflected on his trade transcripts as 0.0s. Would your client need to... I assume, in light of that, you need some sort of special dispensation to get to re-enroll? Because normally, if you fail out a whole semester, you're probably out or... And so, if you look at President Wood's declaration, it confirms what the nursing program... how it works, which is you have... if you fail to complete two terms within the program, you're out, and you have to go back to start at the beginning. And so, my client took an original leave of absence based on back surgery, and then he came back to the program. This happened. He's given the zeroes. Based on the own terms of the nursing program, that means he's out and would have to retake everything all over again. What President Wood's declaration says is, I could overrule that. It doesn't say she will. It doesn't say that that will happen. It doesn't say that if he applies, he will be reinstated. It says, I have the authority to overrule the nursing handbook, which says, two times,  She doesn't commit to that in any way, shape, or form. You can also see what the evidence is of those being zeroes, is we get this email from financial aid saying, you failed to make academic progress because we gave you zeroes in all of these classes. Therefore, you're ineligible for student aid. And that's ER 1742 and 43. So basically, your position is you want your client restored to the status quo prior to all of this happening. Yes. Essentially, right? We want him reinstated into the program. There's this notice of discontinuance. He didn't disenroll himself. He didn't unenroll himself. He was discontinued from the program. The prospective injunctive relief in this case is reinstatement, just like it would be in an employment context, which this court has determined. And I think every circuit court has looked at it in the employment context. Reinstatement is a prospective injunctive relief remedy available to the court, and specifically to the Ninth Circuit, that is Doe versus Livermore National Laboratory. In regard to what extent can the court even review the merits of the underlying issue for the sovereign immunity analysis, the United States Supreme Court decision in Verizon of Maryland says, the inquiry into whether a suit lies in Ex parte Young does not include a merits analysis. And that's 535 U.S. at 646. Specifically, in this court, in the case of Coeur d'Alene Tribe of Idaho versus State of Idaho, 42 F3D 1244, the court says the inquiry into the underlying merits is to look to see whether the violation of federal law is clearly frivolous or insubstantial. The possibility the defendant will ultimately prevail on the merits does not clothe the defendant in 11th Amendment immunity. So the scope of what this court is looking at in regard to whether there was an underlying violation of federal law in this situation is only to determine whether that alleged violation is clearly frivolous or insubstantial. In this case, my client was sanctioned and discontinued from the program based on his private conversation with his doctor where he disclosed that he was having violent ideations based on depression, anxiety, and in conjunction with his epilepsy because he wasn't getting sleep. He realized these thoughts a week before he had that doctor's appointment. It took him a week to get in there. He doesn't. He's at school. He's normal. There's no evidence of any sort of conduct and furtherance of these thoughts. He doesn't tell anyone at the school. He doesn't even tell his wife. Only person he tells is the doctor. So I think we're familiar with that. Can I ask you, what's, in this case, if we were not to reach the merits in this case, you know, and finish this balance, what's left in this case for the district court? An evidentiary hearing to determine the scope of the injunctive relief that's appropriate. That would be next. And then there is no damages, is that right? Because that's what got knocked out in the last appeal. Not on the 1983 claim because the 1983 claim, the trial court decided that it was clearly established. This court, in an unpublished decision, said it was not clearly established, which would not provide for monetary damages under 1983. We did take the disability claims to trial, which was under the ADA, RHA, and WALD, Washington Law Against Discrimination. That occurred in August of this last year. There was a defense verdict. So that's been handled. So the only question would be going back to the court is to fashion the scope of injunctive relief. And then they could appeal. Correct. Then all these issues could be before that panel. The constitutional issues. Correct. Okay. I do want to make the pitch, at least briefly, that there isn't any jurisdiction on the collateral order doctrine when the claim is for Ex Parte Young. Because Puerto Rico Aqueduct is a damages case. And when the respondents in that case are saying, well, what about Ex Parte Young? The court says that is a class of relief that is solely outside of a sovereign immunity defense. And so why would we have a collateral order doctrine that applies to when the plaintiff is asserting a claim for prospective injunctive relief under Ex Parte Young, in which 11th Amendment sovereign immunity is not a defense, and say we're going to have that interlocutory reviewed? Well, they're seeking, at bottom, they're seeking 11th Amendment immunity. Correct. And they say, we're entitled to it, and the district court was wrong in denying it to us because this doesn't fit under Ex Parte Young. Now, they confuse things by talking about the merits, but they say, this doesn't fall under Ex Parte Young because the district got it wrong on the scope of injunctive relief. So, when the analysis is circumspect as we're looking for, is there a violation of federal law alleged that is either clearly not frivolous or insubstantial, whether the person who's being sued is someone who is acting on behalf of the state, and whether the relief is sought is prospective injunctive relief. With those three factors together, sovereign immunity is not a defense. And when we look at the text of what, 28 U.S.C. 1291, it says final decisions. And the collateral order doctrine by the U.S. United States Supreme Court's own terms is a narrow doctrine. It's not supported by the text of 1291. Is this an argument? I mean, don't we have precedent on this in our court, so? It would be that one footnote in In Re Elliot, that says that we have, and it's, I'm paraphrasing, but we have jurisdiction to review under the collateral order doctrine with a site to Puerto Rico aqueduct, and the case is about prospective injunctive relief. To the extent that the court looks at that footnote and says, that is binding on our panel, you're absolutely right. When I looked at it, and when I tried to find the case law in regard to it, is that enough to be binding? I couldn't get to a good enough answer to say whether, but if you feel bound by that, then you're absolutely right. That would have to be taken on bonk. And certainly, I would point to other circuits have disagreed with my argument on that. I believe the Fifth Circuit is one that will look at Ex Parte Young on the collateral order doctrine and has made it clear that if that's, if they're, Well, I could see where, like, if we weren't where you are now, you'd have more standing. But if you think you're going to win from this panel, why would you want, you know, No, I agree. I'll take the narrow end, too, in regard to that we can't look at the merits of this standpoint. I think the requested relief is clearly prospective injunctive relief under both National Abloh and Martin. And Flint v. Denison, which is a student college case about, it's a weird case because it's about a student who spends too much on campaign finance for his university Senate seat. And he is censured and he's removed from the Senate. And so the Montana, is the school in this situation, says 11th Amendment sovereign immunity. There's no prospective injunctive relief here. And the court says no, getting those things expunged from his record is prospective injunctive relief and then finds against him on the merits because when you look at what the district court did, it was only about the merits of campaign finance law. So he lost on summary judgment, which means it wasn't up on the collateral order doctrine. But the court, and I don't know how they ended up raising it. I guess it's subject matter jurisdiction, so maybe they raised it for the first time on appeal. But the court says, no, no, that is prospective injunctive relief. We're going to rule against you on the merits because that's what the trial court did on the underlying claim. But there's no sovereign immunity here. And so same situation here is that we have records that need to be expunged based on these. And these are causing real tangible harm to my client because- Specifically, do you mean that the grades would be, the grades would be like those classes, what we try to get from the district court, an order saying those classes, he passed them or- No, no, no. No, that they're just not Fs on his transcript being 0.0s because that's one of the things that's preventing him from getting financial aid is because when you have a straight thing of four zeroes for those classes, you're not making academic progress, therefore- So it's to take away that semester, basically. Yes. Yes. And be reinstated back in the program so he can start right where he was. He doesn't have to- Is it near the end of his program? Yes. That would be the second to last semester of, second to last quarter, excuse me. So all things being perfect, he would have graduated in June of that year. He gets trespassed in March. And then the other analogous case is out of the Fourth Circuit, which is Constantine versus Rectors of George Mason. That's a situation where a law student acclaimed a disability that prevented her from completing a test. There is a tussle between her and the administration about rescheduling that. And she ends up getting an F in the class. And what she says is that F has not only interfered with my clerkship, which she ended up getting, but it's continuing to interfere with my employment prospects. And so, and what the court said was that that is a case that can proceed. And so, that's a very similar situation here. I understand that's out of circuit, but it's another one that is very clear that's showing that that is within the scope of prospective injunctive relief the court can offer. Does the panel have any other questions? I don't believe we have any other questions. We'll go ahead and let your- Thank you for your time. Do you want to finish up? Thank you, Your Honors. I will turn to the prospective injunctive relief question again. And I heard Mr. Yerrick saying RW wants to be restored to the status quo. That is not what prospective injunctive relief is designed for under the Ex Parte Young. It's supposed to be prospective injunctive relief that can remedy an ongoing violation. And I would distinguish an ongoing harm versus an ongoing violation of constitutional rights. It's not a reset button. It's meant to address a continuing violation. You can point to the Nickel versus Attorney General of Georgia case, which we cited to in the briefing. Do you have a dispute that the student has zeros for a whole quarter or semester of grades? I believe on the- I can't remember off the top of my head, Your Honor, if it's just a dash that's- Oh, no. Then let's just stipulate that they have zeros. You don't think that's an ongoing- that's some sort of ongoing damage to the student? That's not an ongoing violation. It might be an ongoing harm, certainly. In the Nickel case, that was a case where the student requested prospective injunctive relief to change a grade from a B to an A in that case. And the court said, no, that's a wholly passed harm that can't be remedied by prospective injunctive relief. I've seen several creative arguments that plaintiffs have made on the Ex Parte Young exception, arguing, for instance, I don't have money currently, so I need a prospective injunctive relief for the Treasury to issue me money to remedy this harm that I suffered in the past. Courts have taken the view that it's not a reset button. It's meant to- there has to be an actual harm ongoing. I would point also to the Opala versus Watt case, and this is the case we cited for the jurisdictional question, but it's out of the 10th Circuit, and I think it's illustrative of this point. In that case, an Oklahoma state Supreme Court justice said- sued the other state Supreme Court justices saying that they changed the rules that prevented him from becoming a chief justice. And in that case, the 10th Circuit said, well, yes, even though you're still not the chief justice and you're still experiencing that harm of not being a chief justice, the election for the chief justice has already occurred, and you're asking us to undo something that has already occurred rather than asking for prospective injunctive relief of something that is ongoing. You don't see a difference between that case and this case? Certainly, there's a lot of differences, Your Honor, but the underlying point remains that there is no ongoing violation occurring right now. There are no sanctions in place. There is no trespass order against RW in place. Have you tried to sit down and sort of work out some sort of settlement? With RW? Certainly, we- as Mr. Urick indicated, we've explored that in the past. We've gone through trial on different issues. And- Why does the district want to keep pursuing all this litigation? You know, Your Honor, that's up to my clients to decide, and that's, you know, ultimately their decision. And they take the question seriously of protecting the faculty and staff very seriously. And that's ultimately what this case is about. What about protecting the rights of the students? Absolutely. That is another serious concern, Your Honor. And that's why we spent significant portions of time on the Tinker balancing test. And it is a balancing test, ultimately. All right. Well, thank you, Counselor. Thank you, Your Honor. Thank you to both sides for their argument. This completes our arguments for the day. We'll be in recess until tomorrow. Thank you. All rise.
judges: PAEZ, VANDYKE, Benitez